Filed 2/28/24  Overland Direct v. Esola Capital Investment CA4/1
Opinion following rehearing

**OPINION ON REHEARING**

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| OVERLAND DIRECT, INC., <br><br> Intervener and Respondent, <br><br> v. <br><br> ESOLA CAPITAL INVESTMENT, LLC et al., <br><br> Defendants and Respondents; <br><br> A&S PARK BOULEVARD, LLC, <br><br> Objector & Appellant. | D080447 <br><br><br> (Super. Ct. No. 37-2011-00071216-CU-OR-EC) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Motion to dismiss denied; requests for judicial notice granted in part and denied in part.  Reversed.

Manatt, Phelps & Phillips, Benjamin G. Shatz, and Benjamin E. Strauss; and Philip A. Metson for Objector and Appellant.

No appearance for Defendants and Respondents.

Blanchard, Krasner & French, Alan Kipp Williams, John F. Whittemore; Williams Iagmin, Jon R. Williams; Law Offices of George Rikos and George D. Rikos for Intervener and Respondent.

This appeal involves a complex set of real estate dealings gone awry in the wake of the 2008 global financial crisis, spawning contentious litigation in multiple courts. Cutting through the thicket of claims, this appeal ultimately turns on whether the trial court acted within the scope of the operative complaint in intervention in voiding three instruments pertaining to a parcel of real property in Van Nuys, California (the Friar property). The trial court voided these instruments following an uncontested trial at which the two named defendants, Daniel Tepper and Esola Capital Investment, LLC (Esola) failed to appear. It later amended that judgment to include the parcel numbers of the affected properties.

We conclude the court exceeded the scope of the operative pleading, rendering the Amended Judgment void as to the named defendants. Nonparty A&S Park Boulevard, LLC (A&S) was sufficiently affected by the Amended Judgment, which resulted in foreclosure on its property, to bring this voidness claim. Accordingly, we reverse and remand, directing the trial court to set aside the Amended Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

While the dealings between the parties are admittedly complex, the facts needed to resolve this appeal are relatively few. Overland Direct, Inc. (Overland), a subsidiary of Overland Direct (Israel), Ltd. (Overland-Israel), made loans to California property owners secured by liens on real property. The loans were funded by Israeli bondholders who were represented by Aurora Fidelity Trust (Aurora). In the wake of the 2008 global financial crisis, deeds of trust securing Overland's loans were assigned to Esola and its owner, Daniel Tepper. Overland claimed the assignments were fraudulent, prompting litigation in multiple courts to adjudicate competing property

2

claims.[1]  Broadly speaking, this appeal involves the alleged assignment of two deeds of trust, one concerning the Friar property and the other concerning a different property in El Cajon, California.

## A.    *Background Facts*

Overland loaned Michael Cartwright $960,000 in 2007.  The note was secured by a first deed of trust on real property owned by his business, Cartwright Termite & Pest Control, LLC in El Cajon (the Cartwright property).[2]  That same year Overland also made a $1.3 loan to Sarkis Grigoryan to construct a 14-unit apartment building on the Friar property.  This one-year loan matured in May 2008 and was secured by a first deed of trust on the property.

Following the global financial crisis, Aurora hired Tepper to evaluate Overland's assets and review its records.  Overland ended up assigning its deeds of trust to Tepper's company, Esola.  This included the first trust deeds on the Friar and Cartwright properties.  The validity, scope and purpose of these assignments are hotly disputed by the parties.  Esola, in turn, assigned the Friar property note and deed of trust to A&S Park Boulevard, LLC (A&S) in 2011 for $600,000.  A&S foreclosed on the note in 2012 and became the fee

---

[1]    We grant A&S's November 15, 2022 request for judicial notice of two volumes of pleadings and orders, as well as Overland's May 9, 2023 request for judicial notice of additional case filings and recorded deeds of trust.  (Evid. Code, § 452, subds. (d), (h); Cal. Rules of Court, rule 8.252(a).)  Because they are unnecessary to our analysis, we deny the remaining requests for judicial notice filed by the parties on September 15, September 25, and October 2, 2023 in response to the court's first request for supplemental briefing.  (See *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482.)

[2]    In 2009, Overland assigned a one-third interest in the note to a third party.  That assignment has no relevance for these proceedings.

simple owner of the Friar property after submitting the winning bid at a trustee's sale.

After Cartwright Termite defaulted in 2010, Esola attempted to foreclose. Cartwright Termite responded by filing this case, which we refer to as the "*Cartwright* action," against Tepper and Esola in 2011. Eventually the court dismissed all but the cause of action for declaratory relief. When in 2013 the court determined that Cartwright Termite lacked standing to sue Esola and Tepper for fraud, Michael Cartwright set out to acquire Overland from the bankruptcy estate of supposed owner Doron Ezra.[3] In 2013, Cartwright purchased "the Estate's interest, if any" in Overland for $15,000.

Having acquired Ezra's "if any" shares in Overland, Cartwright as Overland filed a series of complaints. In this action, he filed a complaint in intervention against Esola, Tepper, and Citivest Financial Services, Inc. (Citivest) for fraud and declaratory relief. This original complaint, filed in January 2016, sued Tepper and Esola for fraudulent conduct in relation to two assignments of the Cartwright property deed of trust. The complaint in intervention did not name A&S as a party or mention the Friar property. The only property referenced was the Cartwright property, and all of the attached exhibits pertained to it. As will become apparent, Overland's primary claim is that its January 2016 complaint in intervention was superseded by a "First Amended *Cross*-Complaint in Intervention," seeking much broader relief, filed by Cartwright on behalf of Overland in March 2016 in a coordinated action, *Payan v. Cartwright Termite & Pest Control* (Super.

---

[3] The parties dispute whether Ezra, the president of Overland, owned any stock in the company at the time he filed for chapter 7 bankruptcy protection. Standing is an issue we do not resolve in this appeal, and we therefore spend little time on the underlying contested facts.

Ct. San Diego County, No. 37-2013-00049616-CU-OR-CTL) (the *Payan* action).[4]

Cartwright qua Overland also filed two other cases against Esola and Tepper that did name A&S as a party and reference Overland's assignment of the Friar property deed of trust.[5]  The LA Friar action sued Esola, Tepper, A&S, and Wells Fargo for quiet title, declaratory relief, conversion, and fraud.  In addition, Cartwright as Overland substituted A&S as a Doe defendant in the SD Friar action, a previously filed case before Judge Sturgeon in San Diego seeking largely the same relief.  A&S moved to disqualify Judge Sturgeon from the SD Friar action (Code Civ. Proc., § 170.6), prompting the case to be reassigned to Judge Wohlfeil.  Eventually the LA Friar action was also transferred to Judge Wohlfeil and consolidated with the SD Friar action.

## B.    *Phase 1 Trial*

In August 2016, Judge Sturgeon conducted a one-week bench trial on Cartwright Termite's sole remaining cause of action for declaratory relief. Having severed the two causes of action in Cartwright qua Overland's complaint in intervention, Judge Sturgeon adjudicated only the declaratory relief claim in the phase 1 trial.  He issued a detailed statement of decision in December 2016.

---

[4]    The parties dispute which of these reflects the operative pleading in this case.  This question is ultimately dispositive of our inquiry on appeal, and we explore the record carefully to conclude the January 2016 complaint in intervention was the operative pleading.

[5]    We refer to the lawsuits filed in Los Angeles Superior Court as the "LA Friar action" (Super. Ct. Los Angeles County, 2016, No. LC103983) and in the San Diego Superior Court as the "SD Friar action" (Super. Ct. San Diego County, No. 37-2013-00078078-CU-BT-CTL).

Preliminarily, the court found Cartwright resolved the standing issue by acquiring Ezra's interest in Overland from the bankruptcy estate. On the merits, it determined that Tepper, purporting to represent Aurora, fraudulently induced Overland to assign the Cartwright deed of trust to Esola. After Cartwright Termite filed this lawsuit, third party Firooz Payan intervened, claiming to have acquired the trust deed from Esola (which Tepper denied). The court granted declaratory relief and declared both purported assignments void. As a result, it held that Overland still owned a two-thirds interest in the Cartwright property deed of trust, and that a 2015 substitution of trustee and deed of full reconveyance between Overland and Cartwright Termite were valid.

## C.  *Phase 2 Trial*

Litigation continued between the parties and A&S in the consolidated SD Friar action before Judge Wohlfeil. Meanwhile, Judge Sturgeon conducted a one-day trial in September 2020 to adjudicate Cartwright qua Overland's previously severed fraud claim. With Esola and Tepper failing to appear at this second phase of trial, the trial was uncontested. (Code Civ. Proc., § 594.) Overland presented its case in a little over forty minutes. Cartwright testified as the person most knowledgeable for Overland, and the court considered the prior testimony and evidence from the first phase of trial.

At the close of trial, the court directed Overland's counsel to prepare separate statements of decision as to Tepper and Esola. Judge Sturgeon approved the proposed statements of decision in November 2020, entering judgment for Overland against Tepper and Esola. As before, the court found that Cartwright owned Overland, having purchased all its shares from Ezra's bankruptcy estate. But in contrast to the first phase of trial, the decision in

6

phase two was not limited to the Cartwright property. Instead, the court voided *all instruments* purporting to convey real property from Overland to Esola or any company controlled by Tepper, including the assignments pertaining to the Friar property deed of trust (among others). Overland was awarded $48 million in compensatory damages for fraud, as well as $60 million in punitive damages based on Tepper and Esola's intentional, malicious, and outrageous conduct. The court reserved jurisdiction over attorney's fees and costs.

In January 2021, the court amended the judgment nunc pro tunc to add parcel numbers and legal descriptions for each impacted property and name each trustee under the respective deeds of trust that were bound by the judgment. (Amended Judgment.) As relevant to A&S's appeal, paragraphs 8 through 10 of the Amended Judgment voided: (1) an August 2010 assignment of the Friar property deed of trust from Overland to ESOLA Capital, LLC, in trust for Aurora, naming LSI Title as trustee; (2) a June 2010 assignment of the Friar property deed of trust again naming LSI Title as trustee; and (3) a May 2011 substitution of trustee replacing LSI Title with Citivest as successor trustee.[6]

## D.    *A&S's Set Aside Motion*

In July 2021, A&S specially appeared to set aside the Amended Judgment as void. (Code Civ. Proc., § 473, subd. (d).) Describing past and pending litigation between the parties, A&S first claimed the judgment should be vacated for extrinsic fraud given Overland's knowledge of A&S's

---

[6]    Other properties were also affected. For example, nonparties Sunrise, LLC and Nice Team, LLC claimed their interests in the Euclid Property were detrimentally affected by the Amended Judgment. They filed a separate set aside motion that was also largely denied.

interest and failure to name or serve it as a party. Citing *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, A&S argued it was an indispensable party not bound by a judgment entered in its absence. It maintained that due process was violated by the adjudication of its property rights in its absence and contended it was prevented from asserting its defenses to Overland's title claims.

Next, A&S argued the Amended Judgment exceeded the relief sought in Overland's operative complaint in intervention, which did not assert any right or remedy involving A&S or the Friar property. Suggesting the phase 2 trial proceeded by default, A&S maintained the court exceeded its jurisdiction in rendering the award.

Finally, A&S contested Overland's standing. It asserted that material facts concerning Overland's ownership had been concealed from the court. According to A&S, Overland was, and remained, a wholly owned subsidiary of Overland-Israel, meaning Cartwright acquired nothing from Ezra's bankruptcy estate.

Explaining how it was prejudiced by the Amended Judgment, A&S related additional history from the pending Friar actions. Trial commenced in those cases before Judge Wohlfeil in October 2020 and was set to resume in August 2021. According to A&S, Overland was proceeding in that case as though it had obtained a judgment for quiet title from Judge Sturgeon, recording a notice of default and attempting to proceed with nonjudicial foreclosure proceedings on the Friar property.[7]

---

[7] At the same time it filed its set aside motion, A&S moved ex parte to advance the hearing date on that motion, requesting it be heard prior to the first phase of bifurcated trial proceedings before Judge Wohlfeil in the Friar actions. That motion was denied, and A&S's set aside motion was calendared

8

Overland opposed A&S's set aside motion. It claimed A&S was not indispensable where it was not a party to any of the instruments pertaining to the Friar property that were voided by the trial court. Maintaining A&S knew of the case and sat on its rights, Overland urged the court to deem its motion untimely. Overland also contended the operative complaint was not its January 2016 complaint in intervention, but rather an *amended* cross-complaint in the coordinated *Payan* action that expressly referenced the Friar property.

Turning to A&S's claim of prejudice, Overland noted that Judge Wohlfeil had considered and rejected the claim that it was a bona fide purchaser for value. Overland further argued that *A&S* lacked standing to challenge Cartwright's ownership of Overland because *it* did not claim to be Overland's owner.

On reply, A&S described the deleterious consequences of Overland's tactics. It claimed Overland relied on the Amended Judgment to force the trustee on the deed of trust to conduct a nonjudicial foreclosure (trustee's sale) and convey title to the Friar property to Overland. A&S further maintained that Judge Wohlfeil had improperly relied on the Amended Judgment in the Friar actions, including in finding standing. A&S accused Overland of gamesmanship and asserted that a void judgment could be attacked at any time. It also reiterated its stance that Cartwright lacked standing to represent Overland's interests.

---

for hearing in January 2022. In the meantime, Judge Wohlfeil issued a statement of decision in the related Friar actions on September 2021 finding A&S was not a bona fide purchaser for value and rejecting its other merits defenses. Briefing before Judge Sturgeon on A&S's set aside motion concluded after Judge Wohlfeil's phase 1 rulings.

## E. *Order Denying Set Aside*

Judge Sturgeon denied A&S's set aside motion in February 2022. In a brief, two-page minute order, the court concluded A&S was not an indispensable party that needed to be named as a defendant. Although its ruling could later adversely affect A&S's interests, the court found it significant that A&S was not a party to any of the instruments voided by the Amended Judgment. Next, the court rejected A&S's claim of extrinsic fraud, finding A&S had ample notice of proceedings and time to intervene if it believed its rights were implicated. As to the scope of relief, the court concluded that all portions of the judgment dealing with the Friar property fell within the relief requested in Overland's March 11, 2016 First Amended Cross-Complaint in Intervention, which it treated as the operative pleading notwithstanding that it bore the caption of the *Payan* action rather than the *Cartwright* action. Finally, it concluded A&S lacked standing to challenge Overland's ownership where *it* did not claim to be Overland's owner and Aurora had not previously claimed ownership.

A&S appeals.[8]

---

[8] Under Code of Civil Procedure section 902, any aggrieved party may appeal an adverse judgment. "[O]ne must be both a party of record to the action and aggrieved to have standing to appeal. The first requirement, that one be a party of record, is subject to an exception under which a nonparty who moves to vacate the judgment is permitted to appeal as if he were a party." (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1342; see *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736–737; *Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 293 (*Doe*) [appellant became party to the action by filing an unsuccessful nonstatutory motion to vacate a judgment affecting her interests].)

10

## DISCUSSION

Reasserting its claims below, A&S contends: (1) the trial court exceeded its jurisdiction by granting relief in excess of what Overland pleaded in its operative complaint; (2) A&S was a necessary and indispensable party required to be joined for the court to void instruments in its chain of title; (3) extrinsic fraud (Overland's gamesmanship) warranted setting the Amended Judgment aside; and (4) Cartwright as Overland lacked standing.

At the outset, we deny Overland's motion to dismiss the appeal as well as its associated request for judicial notice. Overland fails to demonstrate why A&S's alleged failure to comply with unrelated discovery rulings in the SD Friar action before Judge Wohlfeil in any way hampered Overland's ability to defend this appeal. (See *Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 346 [disentitlement is a discretionary rule applied where the balance of equities favors it].)

Turning to the merits, we reach only the first of A&S's claims. As we explain, Overland's original complaint in intervention is the operative pleading. That complaint did not reference the Friar property and only sought cancellation of instruments pertaining to the Cartwright property. The Amended Judgment is void because due process prevented the trial court from expanding the scope of relief sought in the operative complaint at an uncontested trial. Given A&S's interest in any adjudication affecting its chain of title to the Friar property, it had standing to challenge the Amended Judgment as void based on a violation of Tepper and Esola's due process rights.

11

**A.** *Overland's original complaint in intervention is the operative pleading.*

In denying the set aside motion, Judge Sturgeon stated that Overland's "March 11, 2016 First Amended Cross-Complaint-in-Intervention" sought to void instruments pertaining to the Friar property. His order does not explain how a *cross*-complaint filed in another coordinated action—the *Payan* action—that bore only the *Payan* caption could replace a *complaint* in intervention in the *Cartwright* action. Overland attempts to defend this reasoning on appeal. By contrast, A&S asserts that throughout the proceedings the operative pleading remained the original complaint in intervention filed by Overland in January 2016, which was unaffected by any cross-complaint filed in the *Payan* action.

To better understand the record, we requested a supplemental letter brief from the parties identifying any responsive pleadings filed by Tepper or Esola in relation to either the January 2016 complaint in intervention or the March 2016 cross-complaint in intervention. Both parties agree that Esola filed an answer to the original complaint in intervention in this case. The register of actions does not indicate that Overland thereafter sought leave to amend, as would be required to file an amended complaint in intervention against Esola. (Code Civ. Proc., § 472.) Questioned on this point, Overland suggested at oral argument that leave to amend had been granted once Firooz Payan expressed his intent to demurrer to the original complaint. But this was in the *Payan* action; Payan was not named as a defendant in Overland's original complaint in intervention in the *Cartwright* action and would have had no basis to demurrer.

Most or all of the confusion stems from the coordinated (but not consolidated) *Payan* action involving many of the same parties and issues, which was also pending before Judge Sturgeon. Payan claimed to have

12

acquired Esola's two-thirds interest in the Cartwright deed of trust by assignment, a contention Tepper denied. After this action was filed, Payan brought a separate lawsuit—the *Payan* action—against Cartwright Termite and Cartwright in 2013 seeking judicial foreclosure of his alleged interest in the Cartwright deed of trust. Cartwright qua Overland sought leave to intervene in the *Payan* action in April 2014, attaching a proposed *cross-complaint* in intervention asserting claims against Payan, Tepper, and Esola. The motion was eventually granted in early January 2016. Payan filed a demurrer to the original cross-complaint in intervention. At a January 29 hearing, Judge Sturgeon took the demurrer off calendar in light of Overland's expressed intention to file a First Amended Cross-Complaint.

On March 11, 2016, Overland filed a document titled, "First Amended Cross-Complaint in Intervention" in the *Payan* action that asserted claims against Esola, Tepper, and Payan. As depicted below, only the *Payan* action is captioned; the *Cartwright* action is listed by number merely as a coordinated case.

---

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

FIROOZ PAYAN, an individual

             Plaintiff,

vs.

CARTWRIGHT TERMITE & PEST CONTROL, INC., a California Corporation; CTPC, LLC, a California Limited Liability Company; MICHAEL R. CARTWRIGHT II, an individual; and DOES 1 through 20.

             Defendants.

CASE NO.: 37-2013-00049616-CU-OR-CTL

COORDINATED WITH:
37-2011-00071216-CU-OR-EC;
37-2013-00078078-CU-BT-CTL

**OVERLAND DIRECT'S FIRST AMENDED CROSS-COMPLAINT IN INTERVENTION**

**[IMAGED FILE]**

Complaint Filed: May 21, 2013

---

A separate proof of service was filed the same day in the *Payan* action confirming service on cross-defendants Payan, Tepper, and Esola.

Although an exact copy of the First Amended Cross-Complaint in Intervention (with identical time stamp and caption) also appears out-of-order in the register of actions for this case, the purpose for the filing is not specified.  It was not accompanied by any proof of service, nor does the register of actions separately indicate service of process on Esola or Tepper, who had already answered Overland's original complaint in intervention in this case.[9]

Proceedings in this case were bifurcated, with Esola and Tepper appearing at the contested phase 1 trial.  Judge Sturgeon issued a statement of decision in December 2016 addressing only the Cartwright property.  The Friar property and A&S were never referenced in the phase 1 decision.  In addition, the court only referenced the January 2016 original complaint in intervention in its statement of decision.

Leading up to the phase 2 trial, Overland filed a trial brief as to its sole remaining cause of action for fraud against Tepper and Esola.  In over nine pages summarizing the evidence, Overland's trial brief never mentioned the Friar property.  The minutes for the September 30, 2020 uncontested phase 2 trial mention only the original pleading:  "Operative pleading is Complaint in Intervention filed 01/08/2016."  While we lack a trial transcript, the

---

[9]    Counsel for A&S made a comment at oral argument suggesting Esola and Tepper had been served with the "First Amended Cross-Complaint in Intervention."  It is unclear whether counsel meant that Esola and Tepper had been served in the *Payan* action or in this case.  Based on our review, Overland filed a separate proof of service in connection with this pleading in the *Payan* action.  In this case, no proof of service referencing the First Amended Cross-Complaint in Intervention was attached to that document or separately filed.

statements of decision issued by Judge Sturgeon following the phase 1 and phase 2 trials likewise only reference Overland's original complaint in intervention. Judge Sturgeon explained that the phase 2 "trial consisted solely of Overland's cause of action for fraud against Defendants as alleged in Overland's Complaint in Intervention filed on January 8, 2016."

The only reasonable conclusion on this record is that Overland's January 2016 complaint in intervention is the operative pleading. The trial court was mistaken in concluding otherwise. As A&S suggests, had the "First Amended Cross-Complaint in Intervention" amended Overland's prior pleading, judgment against Esola and Tepper would have proceeded by way of *default*, given that neither filed a responsive pleading. Instead, Tepper appeared in the phase 1 trial, and Judge Sturgeon held an uncontested phase 2 trial in his absence to adjudicate the fraud claim.[10] The "First Amended Cross-Complaint in Intervention" filed and served in the *Payan* action, even if a copy was for some reason filed in this action, could not have amended Overland's original complaint in intervention.

_____

[10]    A default judgment can be entered when a defendant defaults by failing to answer a complaint. (Code Civ. Proc., § 585, subd. (a).)  But "a court has no power to enter a defendant's default after the defendant has answered but has failed to appear for trial." (*Yeung v. Soos* (2004) 119 Cal.App.4th 576, 582.)  Instead, where a defendant answers the complaint and receives proper notice of trial but fails to appear at trial, the court may enter a judgment following an uncontested evidentiary hearing. (See *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 862–863; *Merrifield v. Edmonds* (1983) 146 Cal.App.3d 336, 341.)  In any event, merely filing a proof of service in the *Cartwright* action regarding a pleading filed in a different action (the *Payan* action) would not provide reasonable notice that the pleading was intended to apply substantively in the *Cartwright* action as well.

15

**B.** *By exceeding the scope of relief in the operative pleading, the Amended Judgment is void as to Esola and Tepper.*

Relying on Code of Civil Procedure section 580, A&S contends that because Overland's operative original complaint in intervention sought relief only as to the Cartwright property, the Amended Judgment is void either under Code of Civil Procedure section 580 or as a matter of due process. It cites *Garamendi v. Golden Eagle Insurance Company* (2004) 116 Cal.App.4th 694 (*Garamendi*) for the proposition that a judgment exceeding the scope of relief requested in the operative complaint following an uncontested trial is void as a matter of due process. Although the argument could have been better developed, A&S reasoned that the complaint in intervention failed to give either A&S *or* Esola and Tepper notice that the Friar property would be at issue in the *Cartwright* action. Overland does not distinguish *Garamendi*, and we ultimately find A&S's argument compelling.

In *Garamendi*, homeowners sued a subdivision developer for construction defects, and the developer filed a cross-complaint for indemnity against a subcontractor and its insurer. In settling with the developer, the homeowners were assigned the developer's claims against the subcontractor. (*Garamendi, supra,* 116 Cal.App.4th at pp. 699–700.) The case proceeded to trial against the subcontractor. A few days before trial, the subcontractor discovered that its corporate status had been suspended, meaning it could not appear. The subcontractor's insurer, which had undertaken the defense, declined to intervene to represent its interests. Following an uncontested trial, the court found the subcontractor liable and entered a substantial damages award. (*Id.* at pp. 700–701.)

The insurer became insolvent shortly after trial, and the homeowners sought to enforce their judgment by submitting a claim to the state insurance commissioner (serving as liquidation trustee). The insurance commissioner

16

denied the proof of claim, and the homeowners successfully challenged that decision in the superior court. (*Garamendi, supra,* 116 Cal.App.4th at pp. 701–702.) On appeal, the insurer contended that because the subcontractor had not participated at trial, the judgment was akin to a default judgment that had to be limited to the amount of damages specifically requested in the complaint. (*Id.* at p. 704.) The Court of Appeal disagreed, explaining that section 580 of the Code of Civil Procedure only placed that limitation where "there is no answer" by the defendant, not where the defendant answers and participates in discovery but later fails to appear at trial. (*Id.* at p. 705.)

Although Code of Civil Procedure section 580 did not apply to create a strict monetary limitation on the scope of the judgment, the *Garamendi* court nonetheless concluded that a related limitation was required by constitutional due process principles. As the court explained, if the judgment entered after the uncontested trial exceeded the *scope* of liability articulated in the pleadings, then "the constitutional mandate of due process would void the excess, even if Code of Civil Procedure section 580 did not." (*Garamendi, supra,* 116 Cal.App.4th at pp. 706–707.) In reaching this result, the court acknowledged, "The fact that the precise amount of the requested damages was not specified in the complaint does not mean that the resulting judgment necessarily resulted in a deprivation of due process of law." (*Id.* at p. 706.) Instead, procedural due process was violated by the award of personal injury damages or attorney's fees because the operative complaint at the time of trial failed to give the subcontractor reason to anticipate liability along these lines. (*Id.* at pp. 707–709.)

17

As A&S suggests, *Garamendi* compels the conclusion that the Amended Judgment was void to the extent it canceled instruments and awarded damages on properties *other* than the Cartwright property referenced in Overland's original complaint in intervention. The operative complaint did not put Tepper and Esola on notice that title to the Friar property was in any way involved in or potentially affected by this case. Overland only requested cancellation of two instruments pertaining solely to the Cartwright property without ever mentioning the Friar property. The fact that pleadings filed in different cases sought broader relief would not have put Tepper or Esola on notice that they faced liability in the *Cartwright* action as to the Friar property. In this context, due process precluded the court from entering a judgment pertaining to the Friar property following an uncontested trial. The Amended Judgment is void to the extent it granted relief not encompassed by Overland's operative complaint in intervention.

At oral argument and in subsequent briefing, counsel for Overland has suggested there was no due process violation because Esola and Tepper had both notice and an opportunity to be heard regarding the Friar property. The notice argument initially assumed the First Amended Cross-Complaint in Intervention filed in March 2016 was the operative pleading and placed Esola and Tepper on notice that the Friar property was at issue in the *Cartwright* action. Shifting its focus at oral argument and subsequently, Overland maintains that Esola and Tepper had adequate notice and an opportunity to be heard because they presented evidence during the phase 1 trial in August 2016 regarding the Friar property. Following oral argument, we gave Overland permission to designate portions of the phase 1 trial record that it believed reflected Esola and Tepper's notice and opportunity to be heard. Out of an abundance of caution, we later granted rehearing to allow Overland the

opportunity to fully brief the issue. Having reviewed both the phase 1 trial record and the supplemental briefs, we reject the claim.

Starting with the inescapable conclusion that the original complaint in intervention filed in January 2016 was the operative pleading, there is no basis to conclude that Esola or Tepper had due process *notice* that their rights to the Friar property would be adjudicated in the *Cartwright* action. The Cartwright property is specifically defined in the first paragraph of the complaint in intervention as the "Property" that is the subject of the action. As we have noted, it is the only "Property" identified in the pleading as a whole and expressly referred to in the prayer for relief.

In its supplemental brief, Overland retreats from its position that the first amended complaint in intervention was the operative pleading. And by admitting that the original complaint in intervention "did specifically highlight instruments pertaining to the Cartwright Property," Overland implicitly concedes that the Cartwright property is the only property specifically mentioned. But it suggests that if the complaint is "construed in its entirety," it actually "sought broader relief." In support of this assertion, Overland points to references in the complaint restating its contention that "Defendants never had the authority to assign any of [Overland's] assets to themselves or others and as such any such assignments are void as a matter of law." As a result, Overland posited that a judicial declaration was necessary "to determine Overland's rights to its own assets, deeds of trust and . . . properties."

But vague references in the complaint to plural nouns—assignments, assets, deeds of trust and properties—did not provide fair notice to Tepper and Esola that their rights to properties other than the Cartwright property were going to be adjudicated. That Overland believed "*any* such assignments

19

[were] void as a matter of law" is a perfectly acceptable statement of legal position to explain why relief *as to the Cartwright property and the two assignments referenced in the complaint* should be granted. (Italics added.) That is all the complaint in intervention requested. Moreover, opening and closing statements at the phase 1 trial only confirmed that the case involved the Cartwright property alone.[11]

Although the lack of fair notice provided by the complaint in intervention is determinative, Overland extensively discusses evidence at the phase 1 trial that mentioned properties other than the Cartwright property, including the Friar property.[12] That such evidence was presented is hardly surprising. Each party took the position that events and circumstances pertaining to other properties were relevant in deciding the status of the

[11] We grant Overland's December 18, 2023 motion to augment the record and include attached exhibits A and B in the record on appeal. Exhibit A is a minute order stating that Overland had filed a first amended cross-complaint in intervention in the *Payan* action, which was being heard with the *Cartwright* action. Nothing in this order suggests that Overland's pleading had been *filed* in the *Cartwright* action. The phase 1 transcripts attached as exhibit B are even less helpful to Overland. Judge Sturgeon stated at the outset that the *Payan* and *Cartwright* actions had not been consolidated. Payan's counsel referred to Overland's original complaint in intervention to define the issues at trial. Opening and closing statements by counsel for Overland and Cartwright limited the relief sought to voiding assignments affecting the Cartwright property. Counsel for Tepper and Esola responded in her opening and closing statements that those specific assignments were valid.

[12] In this regard we grant Overland's January 25, 2024 request for judicial notice of the declaration of Daniel Tepper filed in the *Cartwright* action in support of Esola's motion for summary judgment. As with the materials submitted with the motion to augment, the Tepper declaration does not alter our conclusion that Overland's complaint in intervention did not place the validity of the assignments or ownership of the Friar property fairly at issue.

Cartwright property. Certainly, the mere presentation of evidence concerning the Friar property during the phase 1 trial does not furnish adequate *notice* that the validity of assignments affecting the Friar property would be adjudicated.[13] Absent such notice, Overland's due process rejoinder crumbles.

## C. *As an aggrieved party, A&S has standing to challenge the Amended Judgment as void.*

Even if the Amended Judgment is void under due process as to defendants Esola and Tepper, it is a separate question whether A&S—*a nonparty*—has standing to raise that claim. "It is elementary that, in the absence of some ground of estoppel, parties and their privies may collaterally impeach a judgment void on its face for lack of jurisdiction. [Citations.] This right does not depend upon any showing of prejudice to their interests." (*Mitchell v. Automobile Owners Indem. Underwriters* (1941) 19 Cal.2d 1, 9.) A different rule applies to *strangers to the case*, who "may attack a void judgment only when, if the judgment were given full effect, some right in them would be affected by its enforcement." (*Ibid.* [nonparty whose substantive rights were not affected by void order could not set it aside].) " 'An aggrieved person, for this purpose, is one whose rights or interests are

---

13    Ezra and Tepper were each questioned about trust deeds for other properties. Payan's counsel objected that other transactions were "irrelevant to these proceedings," which pertained solely "to a property pertaining to Cartwright Termite." Ezra was asked about his signature on various instruments and why the assignments were made in trust for Aurora. The Friar property was discussed in this context. Ezra was pressed vigorously on cross-examination as to his claim the instruments had been doctored. Later during phase 1 proceedings, Tepper was asked about his course of dealings with both Overland and Aurora, including in connection to the Friar property.

injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision.' " (*Doe, supra,* 80 Cal.App.5th at p. 293.)

This court recently applied that standard in *Paterra v. Hansen* (2021) 64 Cal.App.5th 507 (*Paterra*), a quiet title case. After condominium owner Natalie Paterra engaged in a reverse mortgage transaction in 1997, title to her property was reconveyed numerous times to several individuals without notice to Paterra. The 2006 then-owner obtained a $480,000 loan from lender Clarion Mortgage Capital, Inc. (Clarion), secured by a deed of trust on the property (Clarion Deed of Trust) that named Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary. (*Id.* at pp. 513–514.) Paterra sued the various transferees, including Clarion, for quiet title, but Clarion did not answer the amended complaint and was defaulted. Paterra then filed a second amended complaint, continuing to name Clarion as a defendant, but did not serve Clarion with that pleading. (*Id.* at p. 514.) At the close of trial, MERS unsuccessfully moved to intervene. While denying that motion, the court stated MERS would not be bound by the judgment. (*Ibid.*) It entered an amended final judgment that quieted title against all defendants, including Clarion, but stated the amended judgment did not bind persons claiming an interest through the Clarion Deed of Trust. (*Ibid.*)

MERS assigned the Clarion Deed of Trust to ABS REDO Trust II (ABS), which then sought to foreclose. Paterra was able to block the foreclosure in a separate lawsuit against MERS and ABS based in part on the amended judgment against Clarion. The ruling in that related case prompted ABS to move to set aside or correct the amended judgment against Clarion. (*Paterra, supra,* 64 Cal.App.5th 507, 515.) ABS argued the amended judgment was void against Clarion because Paterra never served

22

Clarion with her operative second amended complaint. (*Ibid.*) The trial court denied ABS's motion, concluding: (1) it lacked standing absent sufficient evidence that MERS had assigned the Clarion Deed of Trust to it, and (2) even otherwise, the second amended complaint made no substantive changes and did not have to be served on Clarion. (*Ibid.*)

On appeal, a different panel of this court held that the trial court erred. The amended judgment was void as to Clarion given (among other things) Paterra's failure to serve it with the materially amended operative complaint. (*Paterra, supra,* 64 Cal.App.5th at pp. 515, 530–531.) In reaching this result, standing presented a threshold concern. Paterra argued ABS failed to prove an assignment from Clarion; ABS claimed it had. (*Id.* at p. 527.) We sidestepped that question, accepting ABS's alternative argument that it had standing as an aggrieved party to argue that the amended judgment was void. (*Ibid.*) At the time of ABS's motion to vacate, Paterra had successfully prevented ABS from foreclosing on the Clarion Deed of Trust based on the amended judgment. (*Ibid.*) As a result, "ABS was an aggrieved party with standing to move to vacate the February 2018 Amended Judgment (as to Clarion) on the grounds that the judgment was void (as to Clarion)." (*Id.* at p. 528)

*Paterra* stands for the proposition that a stranger to an action that led to a void judgment has standing to challenge that judgment if its enforcement would cause injury to the challenging party. (See also *Doe, supra,* 80 Cal.App.5th at p. 294 [nonparty had standing to attack court mandate order that "directly impacts and potentially injures [her] education-related rights"].) Applying that principle to this case, Judge Sturgeon voided three instruments in A&S's chain of title to the Friar property. Even if A&S could later launch a separate collateral attack on the Amended Judgment based

23

Overland's failure to join it as a necessary and indispensable party (see *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 668−669), it was sufficiently aggrieved by the invalidation of the Friar property instruments to have standing in this action to challenge the Amended Judgment as void. As laid out in the set aside motion (and not contested in the opposition), Overland used the Amended Judgment to record a notice of default on the Friar property and complete a nonjudicial foreclosure. This was ample injury to give A&S standing to attack the Amended Judgment as void.[14] (*Paterra, supra,* 64 Cal.App.5th at p. 527.)

That brings us back to *Garamendi, supra,* 116 Cal.App.4th 694. Overland's operative complaint in intervention for fraud and declaratory relief sought to void two instruments pertaining to the Cartwright property. The Friar property was nowhere mentioned in that complaint. Tepper and Esola failed to appear for the second phase of trial, but an uncontested trial held in their absence could not, consistent with due process, exceed the scope of relief requested in the operative complaint. (*Id.* at pp. 707−709 [judgment following uncontested trial was void to the extent it awarded plaintiff personal injury damages and attorney's fees not requested in her operative complaint].) Nonetheless, paragraphs 8, 9, and 10 of the Amended Judgment dealt with the Friar property.

---

14    One of the three voided instruments was an August 12, 2010 assignment of the Friar property deed of trust from Overland to "ESOLA Capital, LLC." Noting the slight difference between the designation of the assignee in the August 2010 assignment and the designation of the assignor in the May 2, 2011 assignment by which A&S allegedly received its interest in the Friar property—"Esola Capital *Investment*, LLC"—for the first time in its petition for rehearing Overland contends that A&S has failed to establish any interest affected by the voided assignment. Except in rare instances we will not to consider an argument raised for the first time on rehearing (*People v. Brooks* (2017) 3 Cal.5th 1, 116), and we find no basis to do so here.

In exceeding the scope of relief requested in Overland's operative complaint in intervention, the Amended Judgment was void as to Esola and Tepper as a matter of due process. A&S is aggrieved by the ruling, giving it standing to attack the Amended Judgment as void. This conclusion eliminates the need to address any of A&S's remaining contentions on appeal.[15]

## DISPOSITION

The order denying A&S's set aside motion is reversed. The trial court is directed to enter a new order that grants the motion, vacates the Amended Judgment as void, and enters a new judgment that limits relief to the Cartwright property and does not void any instruments that were not referenced in Overland's original complaint in intervention filed in January 2016. A&S is entitled to its costs on appeal.

DATO, Acting P. J.

WE CONCUR:

DO, J.

KELETY, J.

---

[15] Overland filed a letter in December 2023 attaching a final judgment recently entered by Judge Wohlfeil in the Friar cases. Based on this judgment, Overland maintained, "A&S stands to gain nothing by reversing Judge Sturgeon's Amended Judgment," and "its remedy is to pursue an appeal from the Friar Judgment based upon a whole record review of those proceedings." Given the parties' disagreement regarding the extent to which Judge Wohlfeil (and other courts) relied on the Amended Judgment, rulings in those cases do not affect our analysis.